FILED
2005 JUN 10 PM 4:36

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT COURT**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **LOFTUS C. CARSON, II,** Plaintiff, | § | **CIVIL ACTION** |
| | § | A05CA437 SS |
| **VS.** | § | |
| | § | |
| **UNIVERSITY OF TEXAS AT AUSTIN, and UNIVERSITY OF TEXAS SCHOOL OF LAW,** | § | **JURY REQUESTED** |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**Jurisdiction and Venue**

1. This action arises, in part, under the United States Constitution, particularly under the Fourteenth Amendment and remedial legislation enacted pursuant thereto, as codified at 42 U.S.C. §§ 2000e et.seq. (Title VII).

2. All conditions precedent have been exhausted and/or performed prior to the filing of this original complaint: a charge was filed with the appropriate administrative agency, within 300 days of the date of the adverse employment action(s) complained of herein; a notice of right to sue letter was received by plaintiff from the U.S. DOJ on March 14, 2005; and this original complaint was filed in United States District Court within ninety (90) days of his receipt of the right to sue letter. See Exhibit A, which contains plaintiff's charge, his right to sue letter and USPS delivery confirmation. No other conditions precedent were required to bring this suit.

3. Accordingly, this court enjoys jurisdiction under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §2000e-5(f)(3).

1/2

4. The acts and omissions that serve as the basis for these causes of action all occurred in Travis County, Texas, in this Division of the Western District of Texas. Therefore, venue is proper in this court.

## Parties

5. Plaintiff Loftus C. Carson, II is a resident of Austin, Travis County, Texas. Professor Carson may be contacted or served through his attorney of record.

6. Defendant University of Texas at Austin is a state agency, which may be served process via its President, Larry R. Faulkner, at P.O. Box TMAI 400, Austin, Texas 78713.

7. Defendant University of Texas School of Law is a self-contained unit of a state agency, which may be served process via its Dean, William C. Powers, Jr., at 727 East Dean Keeton Street, Austin, Texas 78705.

## Statement of the Case

8. Loftus C. Carson, II ("Professor Carson") brings this action, in part, in order to enforce his rights protected by the Constitutions and laws of the United States and Texas, such rights having been abridged as a result of the racially motivated disparate treatment, disparate impact and/or retaliation that he has suffered through during his employment at the University of Texas ("University") and University of Texas School of Law ("Law School") as a result of the culpable, if not intentional, if not de jure discriminatory/retaliatory malfeasance, misfeasance and nonfeasance of the defendants.

9. Professor Carson, an African-American male, has been employed as a tenured professor in law at the University of Texas School of Law from 1988 through the present and currently holds the Ronald D. Krist Professor in Law Chair.

10. As an African-American male that attempts to live and work as an equal with his colleagues, Professor Carson has consistently been denied that equality. As a consequence, Professor Carson has suffered focused and disparate treatment both due to his, as apparently perceived by the University and Law School, effrontery in demanding this equality as a proud black man and then complaining when it is denied either through action or inaction.

11. The racially motivated and/or retaliatory disparate treatment and disparate impact and other legally impermissible conduct visited upon Professor Carson by the defendants reflects institutional policies, specifically:

- UTPD's standard operating procedure of disparate treatment of African-Americans,
- the Law School's disparate allocation of resources,
- the Law School's disparate application of discipline,
- the Law School's disparate provision of non-monetary benefits,
- the Law School's disparate provision of access to and participation in decision making processes,
- the University's disparate design and implementation of a process for receiving, reviewing and resolving complaints of discrimination as compared to all other complaints,
- the University's and Law School's maintenance of a hostile work environment, and
- the disparity in the consideration and treatment of complaints and concerns of African-American/black faculty, all as compared with white faculty or faculty that have not engaged in protected conduct by the Law School and the University and their officials.

12. The policies and standard operating procedures of race-based disparate treatment by UTPD officers have been employed and exhibited against African-American faculty, staff and students over the course of the University's history, and despite the wide publicity of this illegal treatment of African-Americans and the possibly even wider publicized committees formed by defendants to study the disparity of treatment, the discriminatory treatment has continued to manifest itself in the custom, and pattern and practices of UTPD's individual officers as well as the conscious decisions and/or deliberate indifference of those in supervisory positions within the UTPD itself

and within the UT Administration (when referred to herein includes the Law School administration) resulting in an absence of appropriate and effective corrective action.

13. Defendants University and Law School have continued and continue to disregard the safety and well being of Professor Carson and other African-Americans despite their full knowledge of, and/or conscious disregard for, UTPD's disparate treatment of, and disparate impact on, African-Americans and Professor Carson both in the past and currently. Not only did the defendants fail to take corrective action, the actions taken by the defendants enhanced the probability and possibility that racial profiling would continue even after Professor Carson's complaints regarding the mistreatment. This has indeed been the case as per Professor Carson's, and on information and belief others', personal experiences. In particular, UTPD Officers conducted disparate and unreasonable searches and seizures of Professor Carson, even after the filing of his charge of discrimination and retaliation, that have yet to be performed on any white faculty, staff or student at the Law School.

14. As a result of the racially discriminatory and/or retaliatory policies and practices of defendants, Professor Carson's constitutional and civil rights have been violated. As a result of the policies and practices of defendants, Professor Carson has been subjected to racially disparate conditions of employment and he has been forced to endure a racially hostile work environment, all in violation of his rights protected and guaranteed by the Constitutions and laws of the United States on multiple individual occasions, on a programmatic scale and on a continuing basis.

15. Concerns important to tenured white faculty are addressed and addressed forthrightly at the Law School and University consistent with universal norms. However, concerns of black faculty at the Law School and University have been and continue to be largely ignored and to the extent not ignored are addressed in a half-hearted, weak, insubstantial manner without consultation with

or input from affected black faculty. This pattern and practice leaves the aura of white supremacy at the Law School and University undisturbed and black concerns and complaints effectively unresolved, if not heightened.

16. Defendants have also acted to ensure that African-American concerns on the Campus and specifically Professor Carson's concerns are not only unresolved and uninvestigated, but are otherwise refused hearing and specifically communicated to be worthless to such an extent that Professor Carson himself is disregarded and humiliated as a non-entity to the Law School and University defendants as a whole.

**Factual Allegations**

17. Professor Carson, an African-American male, has been employed as a tenured professor in law at the University of Texas School of Law in Austin, Texas from 1988 through the present.

18. Of the law school faculty and staff members, Professor Carson has been the only one to have been subjected to a pattern of harassing and assaultive treatment by white officers of the UTPD, a pattern that has been inspired by racial animus and prejudice. The only other law school faculty known to have been confronted by the UTPD and made to identify himself is the only other black law faculty member.

19. This assaultive and harassing conduct occurred consistently over a period of years, the last of which was just last December 2004 and includes but is not necessarily limited to the following types of disparate treatment that Professor Carson was made to endure that white or non-black faculty were not made to endure by the UTPD:

- routinely ordered to produce identification,
- ordered to provide his Social Security Number,
- made to demonstrate that he could lock and unlock his office door,
- made to account for his presence in various law school locations,
- aggressively tailgated by defendants' police vehicles while driving on campus,
- subjected to an assaultive body search,

- opened his office for illegitimate reasons despite his objections,
- physically and verbally abused and intimidated, and
- subjected to threatening, demeaning and degrading interrogations.

20. Professor Carson has also been made to suffer disparate treatment in the terms and conditions of his employment by the Law School and University while white and/or non-black Faculty that were similarly situated to Professor Carson have not been similarly treated to include but not necessarily limited to the following acts and/or omissions by defendants' representatives, agents or administrators:

- denied equal working conditions, despite an absence of a basis for the disparity other than race,
- disciplined for leaving materials in the library while white Law Faculty have left materials in the library,
- harassed for having too many file cabinets while non-black Law Faculty have just as many or more file cabinets,
- harassed for insignificant conduct (leaving boxes on top of a file cabinet in a closet) while non-black Law Faculty are not even approached for engaging in the following conduct which violates clearly defined proscriptions of the University and the Law School: 1. at least two Law Faculty having sexual relations with their students without complying with the policy (while married), 2. consistently giving bogus tests and grades, 3. consistently failing to keep office hours, and 4. having sexual relations with staff,
- harassed for failing to report teaching a class at another educational institution in the evening, which did not conflict with Professor Carson's Law School duties while a non-black Law Faculty was known to have failed to report that he had been arrested and jailed without incident from the University or Law School and other non-black Law Faculty failed to report, as is required by the policy, their engaging in sexual relations,
- harassed for his treatment of his assistant even though his assistant did not and has not complained while white Law Faculty that have engaged in more egregious conduct (to include sexual harassment/misconduct/relationships) that the actual victim/employee had complained about have not been so harassed,
- denied summer grants for the last two summers despite the fact that he had received the same summer grant uninterrupted since they have been offered while white Law Faculty, and/or Law Faculty that have not complained about discriminatory treatment, have not been denied these summer grants in the same manner or frequency as Professor Carson,
- denied any communications from the Law School to him, to the Law School community, to the University community or the public at large related to his receiving a teaching award from the student body while a non-black Law Faculty who won the same award received broadly distributed communications of congratulations and support (despite the fact that this non-black Faculty was known to have been engaged in a sexual relationship with one of his students),

- accosted by an administrator (Associate Dean Steven Goode) and verbally abused with raised voice in anger while in a public place while no other non-black or person who had not complained of discrimination have been similarly accosted,
- targeted, either directly and due to his race, for racially offensive and provocative comments from a non-black person while white faculty have not been subjected to such hate-speech from persons outside of their racial/ethnic classification.
- denied protection, expression of concern, a repudiation of the statement, a plan to stop or even address in any way the conduct and/or any communication whatsoever from the University or Law School regarding the hate speech referred to above despite repeated complaints while no other non-black Law Faculty or Law Faculty that has not complained of discrimination has been similarly denied,
- denied appointment to the Law School Budget Committee for the entire 17 years of his tenure at the Law School,
- denied interests, needs and requests consistently while non-black Law Faculty have consistently been granted theirs,
- required to work in an environment hostile to him due to his race while non-black Law faculty and staff have not, and
- ignored his complaints and concerns about material conditions of his working environment while white Law School faculty and staff have not.

21. Professor Carson has been made to suffer the effects of racial disparate programs, policies and practices of the University and Law School due to their negative and consistent impact on African-American at the University and Law School to include but not necessarily be limited to: 1) complaint procedures, 2) allocation of resources, and 3) assignment and access to decisionmaking processes.

22. The University's policies, procedures and practices for addressing complaints of discrimination, the Non-Discrimination Policy ("NP"), are substantially different than the policies, procedures and practices for addressing all other complaints, the Grievance Process ("GP"). The differences include but are not necessarily limited to the following:

- The complaint process is designed to and effectively avoids, limits and/or removes African-American or other minority groups from meaningful input to the decisionmaking process,
- NP includes an "investigation" process run by an office of the University that is not independent and on information and belief consistently protects the University's interests rather than investigate the allegations, while the GP contains no such investigation authority,
- NP has no right to confront the respondent to the complaint while the GP does,

- NP has no process with even the appearance of independence in the review process while the GP has at least three components that contain at the very least efforts at inserting independence into the process (1. the grievance administrator is a tenure faculty serving on a temporary basis, 2. the initial review of the grievance is conducted by a panel of tenured faculty, and 3. the grievance hearing is conducted by a panel of randomly selected faculty that has the right to recuse themselves if they feel unable to sit in judgment impartially),

23. The Law School's procedures and practices related to the review, allocation, assessment and control of resources to include compensation, grants and non-monetary benefits consistently and disparately favors non-black Law Faculty over black Law Faculty and anti-black programs to the exclusion of programs designed to increase and substantially support racial diversity and tolerance. One example is the unchecked and seemingly unlimited funding of the Center for Law, Business and Economics ("the *Center*") which engages in excesses in spending like expensive restaurants and wine lists for non-black faculty regarding issues and topics that are either hostile to the African-American community or irrelevant to it and the minority community and/or diversity issues in general. The denial of a summer grant for Professor Carson appears difficult to justify when the *Center* spends the equivalent amount of money in short order on dinners, wine and desserts for a few non-black Faculty, some of which have and/or were invited for the very reason that he have taken a public position against affirmative action, diversity through the adoption of factually bereft racist theories and assumptions.

24. As a further example of the disparate impact related to the disbursement of resources, the University and Law School consistently deny Professor Carson his interests, needs, desires and requests while the non-black Law Faculty are consistently granted theirs with at a minimum a disparate decision making process in the disbursement.

25. The University's and Law School's policies, procedures and practices related to the assignment of and access to decisionmaking processes consistently and disparately favors non-

black Faculty over black Faculty. The process has also shown favoritism for those that are hostile to black interests or interests which promote diversity and tolerance, which are clearly within the interest of the majority of the African-American community.

26. Professor Carson has been made to suffer the effects of retaliation from the University and Law School due to their actions against Professor Carson as a response to his protected activity under the statute which include but are not necessarily limited to the following:

- denial of grants available to him every year that he applied for one prior to his complaints of discrimination but were then denied when the University and the Law School had no other duty to Professor Carson other than the duty not to retaliate against him,
- consistent harassment resulting in an environment hostile to Professor Carson due to his protected activity under the statute, and
- acts so offensive as to rise to ultimate employment actions due to their negative effect resulting in a material altering of Professor Carson's employment status.

27. The racially inspired disparate treatment and disparate impact as well as the illegal retaliatory acts visited upon Professor Carson by Defendants' representatives, agents and administrators has been consistent, demeaning, harassing and abusive for many years.

28. As a result of these illegal acts against Professor Carson over the years, his health has suffered greatly to include but not necessarily be limited to: hypertension, high blood pressure, dangerously elevated cholesterol levels, multiple hospital visits, psychiatric and psychological counseling and treatment, prescriptions of medication, weakened heart, severe weight gain, depression, anxiety, headaches, sleeplessness, joint inflammation due to stress, irritability and gout.

**Damages**

29. Because of the outrageous, unconstitutional, and legally impermissible conduct of the defendants to include but not be limited to racially disparate treatment and impact discrimination and retaliation Professor Carson has been forced to work in a hostile environment and has been

subjected to disparate terms and conditions of his work. Professor Carson also has suffered physically, suffered humiliation, loss of standing in the community, emotional pain and distress, helplessness, futility, inconvenience, loss of enjoyment of life, irritation, mental anguish. In conjunction, Professor Carson's emotional and mental suffering has been exacerbated by the defendants' and their representatives' prolonged knowing, conscious, and deliberate conduct to the extent that he has suffered dangerous physical/medical manifestations which threatened Professor Carson's life as a consequence. Accordingly, Professor Carson seeks equitable, injunctive and compensatory damages against the defendants as well as attorney's fees and costs, all in the maximum amounts allowed by law.

## Relief Requested

Paragraphs one (1) through twenty-nine (29) of this complaint are incorporated by reference and made a part of Relief One through Relief Seven below inclusive. Professor Carson has no plain, adequate or complete remedy at law capable of fully redressing the wrongs alleged, and this suit for injunctive relief and equitable, compensatory, and punitive damages is the sole means of securing adequate relief.

## Equitable Relief

### Relief One

Professor Carson has endured, is currently subject to, and will continue to suffer irreparable injury from the policy, custom, pattern and practice of the defendants as set forth herein until and unless enjoined by the court pursuant to 42 U.S.C. §§ 2000e et. seq. Professor Carson specifically requests that the court order the following equitable and injunctive relief:

Defendants and their representatives, officers, administrators and agents refrain from further harassing, retaliating or conspiring against Professor Carson in any manner regarding his employment with the defendants and his presence on the University and Law School campuses.

Defendants and their representatives, officers, administrators and agents treat Professor Carson's contract of employment as if it were a contract with Professor Carson rather than a contract on or about Professor Carson, that is, treat said contract as a contract of equal value to similar contracts between the University and its white professors.

Defendants and their representatives, officers, administrators and agents (to include the police force and administration) complete an appropriate course of instruction on racial sensitivity by a qualified expert on conscious, subconscious and institutional racism forthwith.

Defendant University appoint an ombudsman, acceptable to African-American faculty, charged with interviewing the African-American faculty of the Law School every six months for a period of ten years to determine whether such faculty are being subjected to racism and/or racial insensitivity at the hands of the Law School administration, faculty, staff, or students, of a degree and kind significant enough to maintain or create a racially hostile working environment. In that regard, a report of conclusions of said ombudsmen be prepared and delivered to the Dean of the Law School, University President, the Chancellor of the University of Texas System, the Committee Chairpersons of the Texas House of Representatives and Senate Committees with oversight of the University and all African-American Law School Faculty members.

Defendant Law School abolish the Law School's pattern and practice of marginalizing black faculty and consider the concerns of black faculty in good faith, include black faculty in the making of decisions that affect the terms and conditions of their employment and communicate with black faculty when taking action on issues raised by them or reasonably

related to them in the same way, manner and degree that they consider the concerns of white faculty.

Defendant Law School, along with all other administration staff, representatives and agents cease all patterns and practices of harassing black faculty. In addition, all Deans of the Law School, including all Assistant Deans and above, be ordered to affirmatively respond to resolve all complaints of such harassment to include communicating with the individual making the complaint whether they are black or not.

Defendant University engage an appropriate independent contractor to conduct a "top to bottom" review of the UTPD with the goal of purging it of racism to include an analysis of equal opportunity within the Department to include minorities in policy and supervisory positions.

Defendant University engage an appropriate independent contractor to conduct a "top to bottom" review of the University complaint review and redress process with the goal of creating a process that is actually fair and independent, designed to conduct impartial investigations, conduct full and fair hearings, provide for attorney's fees and costs to the grievant should they prevail, allow for review of the final decision of the president through binding arbitration with costs to be shared initially and costs awarded to the prevailing party. The processes that shall be reviewed and redressed include the EEO office, the procedures and policies related to discrimination complaints and the procedures and policies related to the grievance process. These processes and entities, besides being granted independence, should be authorized to recommend solutions to programmatic disparate impact as well as disparate treatment.

Defendant University establish a Police Review Board with substantial minority representation with the power and capacity to hear and resolve complaints against the UTPD and

its personnel and the authority to recommend appropriate discipline up to and including termination.

Defendant Law School engage an appropriate social and behavioral science specialist to interview and review the experience of all present and past African-American Law School Faculty members for the purpose of determining the nature, kind and extent of racism encountered within the workplace. Such specialist should summarize its findings and make recommendations with regard to how such racism and the effect on subject-faculty members might be minimized. The analyses and recommendations of the aforesaid specialist should include a consideration of whether a salary premium should be paid to black faculty retrospectively and prospectively in light of the special and significant burdens borne only by such faculty (i.e. likened to combat pay for soldiers). The design of such recommendations should focus on making the experience of black Law School Faculty as close as possible to the experience of white Law School Faculty. The University and Law School should implement any and all recommendations of the specialist in conjunction with negotiations with Professor Carson.

Defendant University survey through an appropriate social and behavioral science agency/consultant all African-American University faculty annually, for a five-year period, to determine their race-related concerns. Said survey should be analyzed and a report in that regard prepared and delivered to the University President, Chancellor of the University of Texas System, the Committee Chairpersons of the Texas House of Representatives and Senate with oversight of the University.

Defendant Law School establish a program in conjunction and cooperation with Professor Carson for the purpose of actively recruiting, hiring and retaining additional African-American faculty and staff.

This court will retain oversight jurisdiction of this case for a period of five years to ensure that the relief granted in this matter shall be reasonably, justly and timely implemented.

**Relief Two**

Professor Carson seeks back pay related to the denials of his research grant applications.

**Relief Three**

Professor Carson seeks an award of both pre- and post-judgment interest on any amounts awarded as a result of this litigation.

**Legal Relief**

**Relief Four**

Defendants deliberately and consciously engaged in a pattern and practice resulting in a policy of racially hostile, disparate treatment and impact and retaliation with regard to Professor Carson. The actions of the defendants inflicted damages and were variously intentional, malicious, grossly negligent, or demonstrative of a reckless disregard for Professor Carson's and African American's civil rights, health and well-being. This invidious racial discrimination was directed at Professor Carson on account of his race and/or subsequently in retaliation for the complaints he registered with regard to his racially disparate experience he has suffered while employed by Defendants. Accordingly, pursuant to the damages alleged, supra, Professor Carson is entitled to compensatory damages.

**Relief Five**

Pursuant to 42 U.S.C. § 2000e-5(k), Professor Carson is entitled to reasonable attorneys fees and costs.

**Prayer for Relief**

Therefore, Professor Carson requests the court to cause the defendants to be cited to appear and answer in this court, and that upon final hearing, the court grant to Professor Carson relief as follows:

1. Grant Professor Carson injunctive relief enjoining the defendants, their agents, successors, employers, and those acting in concert with them or at their direction from continuing to abridge the rights of Professor Carson in accordance with the injunctive relief detailed within the complaint above;

2. Grant Professor Carson pre- and post-judgment interest in the highest amounts allowed by law;

3. Grant Professor Carson compensatory damages for defendants' acts of discrimination and/or retaliation against Professor Carson;

4. Grant Professor Carson reasonable attorney's fees and expert fees together with his costs; and

5. Grant Professor Carson such other and further relief as appears just and equitable in the circumstances of this case.

Respectfully submitted,

Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
509 West 16th Street
Austin, Texas 78701
(512) 474-7563
(512) 474-9489 facsimile
ATTORNEY FOR PLAINTIFF

Jun-07-2005 02:32pm From-EEOC-SADO +2102812522 T-624 P 002/003 F-082

CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

[X] FEPA 650-04-456
[ ] EEOC 36AA400465

C O A Equal Emp/Fair Housing Office and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Loftus C. Carson, II | (512) 795-8934 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2001 Manawa Street, Austin, TX 78705 | | 07/16/1946 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| University Of Texas | Cat D (501 +) | (512) 232-1101 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| P.O. Box Tma1400, Austin, TX 78713 | | 453 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

[X] RACE [ ] COLOR [ ] SEX [ ] RELIGION [ ] NATIONAL ORIGIN
[X] RETALIATION [ ] AGE [ ] DISABILITY [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST 07/01/2003 LATEST 07/01/2004
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

Since July 2003, through the present, I have registerd complaints of disparate treatment at the Respondents.

On July 1, 2004, I was denied compensation in retaliation for registering those complaints.

I believe the Respondent has discriminated and retaliated against me because of my race, black, in that I was denied compensation in violation of Title VII of the Civil Rights Act of 1964, as amended and the Texas Commission on Human Rights Act, as amended.

MANUEL CUESTA NOTARY PUBLIC STATE OF TEXAS
NOVEMBER 29, 2005

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

Loftus C. Carson, II

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year)

7-30-2004

Date 7-30-04 Loftus C. Carson, II Charging Party (Signature)

EEOC FORM 5 (Rev. 07/99)

**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
5059 1861

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

March 11, 2005

Mr. Loftus C. Carson, II
c/o Robert Notzon, Esquire
Law Office of Robert Notzon
Attorney at Law
509 W. 16th St.
Austin, TX 78701

Re: EEOC Charge Against University of Texas
No. 36A200400465

Dear Mr. Carson, II:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

R. Alexander Acosta
Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc: San Antonio District Office, EEOC
University of Texas

7003 0500 0002 5059 1861

U.S. Postal Service
CERTIFIED MAIL
(Domestic Mail Only; No Ins...

OFFICI...

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

TOTAL P.02

UNITED STATES POSTAL SERVICE

Home

# Track & Confirm

## Current Status

You entered 7003 0500 0002 5059 1861

Your item was delivered at 4:08 pm on March 14, 2005 in AUSTIN, TX 78701.

## Track & Confirm

Enter label number

Go >

Track & Confirm FAQs Go >

POSTAL INSPECTORS
Preserving the Trust

site map contact us government services

Copyright © 1999-2002 USPS. All Rights Reserved. Terms of Use Privacy Policy